IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL THOMAS GATENA and<br>CARLA GRACE ENGLER,<br><br>    Defendants. | Case No. CR05-1021<br><br>REPORT AND RECOMMENDATION |

_____

This matter comes before the court pursuant to Defendant Carla Grace Engler's August 25, 2005 motion to suppress evidence (docket number 49). The motion was referred to the undersigned United States Magistrate Judge for issuance of a report and recommendation. It is recommended that the defendant's motion to suppress (docket number 49) be denied in part, and ruling be reserved in part, as set forth below.

## I. INTRODUCTION

The defendant's motion to suppress arises out of several search and seizure incidences, including three warrantless vehicle searches. The defendant asserts that the "admission of any items seized during the searches and seizures would violate [the defendant's] rights under the 4th Amendment to the United States Constitution to be free from unreasonable searches and seizures." The defendant further asserts that "[a]ny statements that may have been made by [the defendant] following or during the search[es] were obtained as a result of invalid and unconstitutional searches, and must be suppressed as 'fruit of the poisonous tree.'" According to the defendant, the searches "were conducted without reasonable grounds to believe, or without particularized suspicion of any criminal activity," and without the consent of the defendant.

1

Hearing will be set on the defendant's challenges to the warrantless searches of vehicles taking place on December 30, 2004, January 30, 2005, and June 5, 2005. The court sets forth the factual background for the searches conducted pursuant to warrants in turn.

## II. FACTUAL BACKGROUND

### A. November 18, 2004 Search and Seizure Pursuant to Warrant

The first search and seizure incident challenged by the defendant involved a search of the defendant's residence conducted pursuant to a warrant on November 18, 2004. The search occurred at 101 E. 29th Street, Dubuque, Iowa. The search warrant application indicates that the warrant was for a search of the defendant's residence for items including methamphetamine, other controlled substances, chemicals and apparatus used in the manufacture of methamphetamine, addresses and/or telephone books and papers reflecting names, addresses and/or telephone numbers, and any weapons, firearms, ammunition or explosives. The search warrant application was submitted with an affidavit in support of the application. The affiant was Investigator D. Haupert, a police officer with the Dubuque Drug Task Force. The affidavit states that within the preceding eleven months, investigators had received intelligence from multiple sources to the effect that:

> (1) Michael Gatena and [the defendant] manufacture methamphetamine at 11294 Rock Grove Court #5, within the garage assigned to that apartment . . .
> (2) On 1/13/04 Investigators received information from a confidential informant that Gatena sold methamphetamine to them and the informant could smell . . . a methamphetamine cook in progress.
> (3) On 8/24/04 Investigators received information from a confidential informant that [Michael] Gatena uses [the defendant] to obtain materials commonly used during the manufacture of methamphetamine.
> (4) On 9/28/04 a Dubuque County Deputy was dispatched to 11294 Rock Grove Court after a report that [Michael] Gatena [was] burning items in the yard. The

                        deputy observed several burnt and unburned matchbooks with the striker plates removed.

(5)    On 10/18/04 Investigators received information from a confidential informant that [Michael] Gatena [was] still cooking at his residence and [was] associated with [the defendant].

(6)    On 10/25/04 an informant told investigators they had received methamphetamine from [Michael] Gatena and stated that he cooks methamphetamine in his basement.

(7)    On 11/04/04 Investigators received information from a confidential informant that [Michael] Gatena cooks methamphetamine in a side room in the basement and described [the room] as being under the stairs.

(8)    On numerous occasions within the [preceding] 60 days [the defendant] purchased several bottles of Heet gasoline additive from Eichmans Convenience Store in Sageville, Iowa.

(9)    That within the [preceding] 48 hours Investigators . . . received additional information from a confidential informant that [Michael] Gatena and [the defendant] are actively involved in the manufacture of methamphetamine and pre-cursors . . . [and that the defendant] processes iodine into iodine crystals which are then used during the red phosphorous method of manufacturing methamphetamine.

(10)    The confidential informant [reported] that [Michael Gatena] was at [the defendant's residence] and picked up iodine crystals, red phosphorous and pseudoephedrine . . . and stated "I'm going home now." The informant also stated that [the defendant] had numerous cases of matches, several bottles of Heet gasoline additive and glassware at her residence. The informant also [reported] that they observed [the defendant] process the iodine into iodine crystals on 11/17/04 at her residence.

The Magistrate Judge determined that the information supplied by the confidential informants appeared credible because sworn testimony indicated that at least one informant had given reliable information on previous occasions. The Magistrate further noted that "[b]oth informants appear credible because it is in their best interests to provide reliable

information," that the informant had supplied information in the past multiple times, that the informant had not given false information in the past, and that the information supplied by the informant in the investigation had been corroborated.

### B. December 30, 2004 Search and Seizure

The second incident challenged by the defendant was a search of the defendant's residence conducted pursuant to a search warrant, occurring on December 30, 2004.[1] The December 30, 2004 search warrant application was for the search of "[t]he residence of [the defendant] an Michael Thomas Gatena at 101 East 29th Street, Dubuque, Iowa." Like the search warrant executed on November 18, 2004, the search was for items including methamphetamine, any and all other controlled substances, chemicals and apparatus used in the manufacture of methamphetamine, addresses and/or telephone books and papers reflecting names, addresses and/or telephone numbers, and any weapons, firearms, ammunition or explosives. Investigator Haupert again served as the affiant in support of the application for search warrant, and stated by affidavit, in relevant part:

> On 12/30/04 . . . Deputy Schultz of the Dubuque County Sheriff Office was on routine patrol . . . and observed a vehicle with the passenger door standing open with nobody around. The vehicle was . . . registered to Michael Gatena. Upon further investigation Deputy Schultz noticed approximately 7 large black garbage bags in the open bed of the truck . . . . Deputy Schultz advised that he could see in plain view several hundred "Diamond" brand matchbooks with the striker plates removed, six bottles of "HEET" gasoline additive, and a paper plate . . . Deputy Schultz is a certified clandestine laboratory investigator and through his training and experience knew that these items are consistent with the manufacture of methamphetamine . . . .

---

[1] The defendant also challenges a warrantless search of Michael Gatena's pickup, which occurred prior to the issuance of a search warrant for the defendant's residence on December 30, 2004. The court will consider the defendant's challenges to this warrantless search at an evidentiary hearing, to be scheduled.

The Dubuque Drug Task Force has received several intelligence reports in the past indicating that Michael Gatena is involved in the manufacture of methamphetamine. Additionally, on 11/18/04 a search warrant was executed at the Gatena residence [at 101 E. 29th Street] after information was received that he had been manufacturing methamphetamine. During that search . . . a complete red phosphorous laboratory was located. [Michael] Gatena has also been charged in the past for controlled substance violations to include possession of methamphetamine pre-cursors. During the search of the vehicle, Investigators located several garbage bags. One of these bags contained several purple and red stained paper plates, rubber gloves and paper towels as well as several hundred soaked matchbook striker plates with the red phosphorous removed . . . . Also in the bag was a City of Dubuque utility bill . . . addressed to Michael Gatena at 101 East 29th Street . . . and a Mediacom bill . . . addressed to [the defendant] at 101 East 29th Street . . .

The Dubuque Drug Task Force has received several intelligence reports in the past indicating [the defendant] is involved in the manufacture of methamphetamine. Additionally, on 11/18/04 a search warrant was executed at the Gatena residence at which time subjects in the residence were actively stripping the striker plates from matchbooks. Also during that search investigators located iodine crystals and methamphetamine. On 12/29/04 investigators also received information that the defendant was observed operating the . . . pickup . . . registered to [Michael] Gatena.

The warrant application noted that it did not rely upon information by a confidential informant.

### C. June 5, 2005 Search and Seizure

Finally, the defendant challenges a search of her residence, conducted pursuant to a search warrant, which occurred on June 5, 2005.[2] The June 5, 2005 application for

---

[2]The defendant also challenges a search of the minivan parked at her residence which
(continued…)

5

search warrant indicates that the warrant was for the search of the defendant's residence "at 101 East 29th Street and the common basement and a Green 1995 Oldsmobile minivan registered to Heather Lynn Avenarius . . . parked directly in front of" the defendant's residence.[3] Again, the search warrant was for items including methamphetamine, any and all other controlled substances, chemicals and apparatus used in the manufacture of methamphetamine, addresses and/or telephone books, and any weapons, firearms, ammunition or explosives. Investigator Haupert again served as the affiant for the warrant application. Investigator Haupert attested to the following:

> On June 5, 2005 . . . Officer Baker . . . observed a [g]reen Oldsmobile minivan with the side sliding door and front passenger door open while it was illegally parked directly in front of [the defendant's residence] . . . . Officer Baker saw that there were two one-gallon containers of unknown substances in anti-freeze bottles sitting in the street next to the open door of the minivan . . . . Officer Baker also knows that [the defendant] lives at 101 East 29th Street and that through his monthly intelligence information he knows that she is a manufacturer of methamphetamine.
>
> During the investigation . . . Officer Roy responded with his K-9. The K-9 subsequently indicated on the van for the presence of illegal substances. After the K-9 indicated on the van a search was conducted. During that search officers located a cardboard box containing 14 bottles of hydrogen peroxide and a full gallon of strong iodine. Officers knew through their training and experience . . . that hydrogen

---

[2](…continued)
occurred prior to the officers seeking a warrant for the minivan, registered to Heather Avenarius. This initial search comprised of police surveillance of items associated with the manufacture of methamphetamine viewed through the open minivan sliding door, followed by a sweep of the exterior or interior of the vehicle with a K-9, which indicated on the van for the presence of illegal substances. The court will consider the defendant's challenges to this warrantless search at an evidentiary hearing, to be scheduled.

> peroxide and strong iodine are used during the manufacture of methamphetamine via the red phosphorous method.
>
> During the . . . investigation Officer Roy located a neighbor . . . [who] told [Officer Roy] that just prior to Officer Baker's arrival in the area . . . he observed the female who he knows to live at 101 East 29th Street going in and out of the . . . minivan . . . and then going in and out of [the residence] 'with the funky rug' on more than one occasion. [The neighbor] described the [resident] as a white female with blonde hair with a tan complexion wearing pink shorts and a black top. This description matches that of [the defendant].
>
> In April of 2005 investigators . . . received intelligence that [the defendant] was selling iodine crystals to Dal Darland for the manufacture of methamphetamine via the red phosphorous method. In May of 2005 investigators . . . received intelligence information that [the defendant] was preparing red phosphorous, a pre-cursor for the manufacture of methamphetamine for herself.

The affidavit also describes the searches executed on November 17, 2004 and December 30, 2004 in an effort to establish probable cause for issuance of the June 5, 2005 warrant.

### III. CONCLUSIONS OF LAW

The Search Warrants: Franks Challenge

The defendant contends that "after excluding the false and misleading materials contained in the search warrant request[s], the remaining information was insufficient to establish probable cause for the search warrant[s]." Put simply, the defendant challenges the sufficiency of the warrants based on the standard set forth in Franks v. Delaware, 438 U.S. 154 (1978).

This court employs the standard set forth by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983), to determine the existence of probable cause because the evidence that the defendant seeks to suppress was gathered pursuant to a search warrant. It is well established that a warrant affidavit must show particular facts and

circumstances in support of the existence of probable cause sufficient to allow the issuing judicial officer to make an independent evaluation of the application for a search warrant. United States v. Riedesel, 987 F.2d 1383, 1390 (8th Cir. 1993) (citing Gates, 462 U.S. at 238). The duty of the judicial officer issuing a search warrant is to make a "practical, commonsense decision" as to whether a reasonable person would suspect the discovery of evidence based upon the totality of the circumstances. Gates, 462 U.S. at 238; Riedesel, 987 F.2d at 1390; United States v. Peterson, 867 F.2d 1110, 1113 (8th Cir. 1989). Sufficient information must be presented to the issuing judge to allow that official to determine probable cause; his actions cannot be a mere ratification of the bare conclusions of others. Gates, 462 U.S. at 239. However, it is clear that only the probability, not a prima facie showing, of criminal activity is required to establish probable cause. Id. at 235.

This court does not review the sufficiency of an affidavit de novo. A reviewing court should pay great deference to an issuing judge's determination of probable cause. Id. at 236. The duty of the reviewing court is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. Id. at 238–39.

Suppression remains an appropriate remedy where the magistrate who issued the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth. Franks v. Delaware, 438 U.S. 154 (1978). "A defendant is not entitled to a [Franks] hearing to determine the veracity of a search warrant affidavit unless 'he or she can make a substantial preliminary showing that a false statement was included in the affidavit (or that relevant information was omitted from it) intentionally or recklessly.'" United States v. McNeil, 184 F.3d 770, 775 (8th Cir. 1999) (quoting United States v. Mathison, 157 F.3d 541, 547-48 (8th Cir. 1998)). "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. McNeil, 184 F.3d at 775-76. "When no proof is offered that an affiant deliberately lied or recklessly

8

disregarded the truth, a Franks hearing is not required." United States v. Moore, 129 F.3d 989, 992 (8th Cir. 1997).

In order to prevail on a challenge to a warrant affidavit pursuant to Franks v. Delaware, 438 U.S. 154 (1978), the challenger must show (1) that a false statement knowingly and intentionally or with reckless disregard for the truth, was included in the affidavit and (2) that the affidavit's remaining content is insufficient to establish probable cause. United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995).

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

Franks v. Delaware, supra, at 171.

Further, in order to mandate a hearing, the challenged statements in the affidavit must be necessary to a finding of probable cause. United States v. Flagg, 919 F.2d 499 (8th Cir. 1990). United States v. Streeter, 907 F.2d 781, 788 (8th Cir. 1990) (contested material must be "vital" to probable cause). It must also be remembered that although the affidavit must contain statements that are truthful,

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct. For probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that some times must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

Franks v. Delaware, supra, at 165. Substantial deference must be given to the magistrate's determination of probable cause, and such finding shall not be set aside "unless the issuing judge lacked a substantial basis for concluding that probable cause existed." United States v. Amburn, 412 F.3d 909, 917 (8th Cir. 2005) (citing United States v. Searcy, 181 F.3d 975, 981 (8th Cir. 1999) (quoting United States v. Edmiston, 46 F.3d 786, 788 (8th Cir. 1995)).

Omissions of facts are not misrepresentations unless they cast doubt on the existence of probable cause. United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987). The same analytical process used to determine whether an affidavit contains a material falsehood is used to determine whether an omission will vitiate a warrant affidavit under Franks. United States v. Lueth, 807 F.2d 719, 726 (8th Cir. 1986). The defendant must show that (1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) that the affidavit, if supplemented by the omitted information, would not have been sufficient to support a finding of probable cause. With respect to the second element, suppression is warranted only if the affidavit as supplemented by the omitted material could not have supported the existence of probable cause. Lueth, supra, at 726. Put simply, the defendant must show that the alleged omissions would have made it impossible to find probable cause. United States v. Stropes, 387 F.3d 766, 771 (8th Cir. 2004).

For example, the fact that an informant had a criminal record and was cooperating under a plea agreement is not critical to the finding of probable cause. Flagg, supra; United States v. Martin, 866 F.2d 972 (8th Cir. 1989) (omission of fact of informant's drug addiction of no consequence to determination of probable cause). The fact that the police omitted information that an informant had been a drug dealer, was cooperating with the police in order to receive leniency, and was being paid by the police did not warrant relief in United States v. Wold, 979 F.2d 632 (8th Cir. 1992). See also United States v. Reivich, 793 F.2d 957 (8th Cir. 1986). It is not necessary to notify the magistrate of an

informant's criminal history if the informant's information is at least partially corroborated. United States v. Parker, supra. Similarly, it was not misleading, as a matter of law, to omit the fact that the informant was the defendant's sister. United States v. Johnson, 925 F.2d 1115 (8th Cir. 1991). A defendant's belief that an informant lacks credibility and reliability is not crucial to the finding of probable cause when the informant's information is at least partially corroborated. United States v. Humphreys, 982 F.2d 254, 258 (8th Cir. 1992) (citing United States v. Flagg, 919 F.2d 499 (8th Cir. 1990); United States v. Parker, 836 F.2d 1080 (8th Cir. 1987).

In regard to the November 18, 2004 warrant, the defendant argues that the lack of information concerning the informants' credibility, reliability, and veracity, resulted in the warrants being issued without any showing of how the magistrate independently reviewed the information set forth in the applications or his determination that such information was in fact corroborated. Specifically, the defendant argues that several significant omissions resulted in the issuance of the November 18, 2004 search warrant, including (1) the non-inclusion of information (upon the defendant's good faith belief) that one of the two confidential informants is a known drug user and had a long criminal history; (2) the fact that although the endorsement noted that Officer Pregler was a testifying officer, other law enforcement reports indicate that Officer Pregler "did not go to obtain [the] search warrant, but rather remained [on scene] and helped create an operation plan for the execution of the search warrants"; (3) the absence of any assessment as to the credibility of the informants; (4) the absence of information that indicated that Michael Gatena and the defendant lived at separate residences and were arguing and fighting during the time period in question; (5) the absence of any evidence that criminal activity was, at the relevant time, being committed at the defendant's residence; (6) a lack of any nexus between any past alleged criminal activity, including activities taking place at 11294 Rock Grove Court and the defendant's residence; (7) the absence of any labeling or identification of who the confidential informants are by numbering or other objective identification;

11

(8) the fact that boxes indicating reliability of the informants were left unchecked; (9) the fact that some of the information contained in the affidavit does not, or may not, relate to the defendant's residence; (10) the non-inclusion of information that the location of the cook described in the affidavit was 11294 Rock Grove Ct. #5, rather than the defendant's residence, and that officers had been advised that a Kim Koster was living with Michael Gatena; and (11) a lack of information that the defendant and Michael Gatena were not getting along and that they had been arguing frequently.

As concerns the December 30, 2004 search and seizure pursuant to a warrant, the defendant contends again that several omissions in the warrant application result in the warrant being invalid. Those omissions include, (1) the fact that although the December 30, 2004 warrant application refers to the search warrant of November 18, 2004 in establishing probable cause, it is unclear as to whether the warrant of November 18, 2004 referred to concerns the search of the defendant's residence, or a search that was executed at 11294 Rock Grove Court #5 on or about November 18, 2004; (2) part of the information supporting probable cause included the warrantless search of Michael Gatena's pickup, which was being driven by the defendant, occurring on December 30, 2004, and the defendant believes that such search was tainted as there is evidence that Officer Schultz had to remove some of the items found from the plastic bags and some of the plastic bags were contained in the passenger compartment of the truck rather than in the open bed; (3) although the body of the December 30, 2004 search warrant indicates that there were several intelligence reports to the effect that Michael Gatena was involved in the manufacture of methamphetamine, there was no identification of the informants, and no information concerning their reliability or credibility, nor any information concerning the magistrate's evaluation of the informant's information or any verification of that information.

Finally, the defendant claims that several important omissions were made in the application for the June 5, 2005 warrant. Specifically, the defendant argues that

(1) although the application makes reference to "intelligence" relating to April and May of 2005, there is no evaluation or reference to information supplied by any informants, and accordingly, there is no showing of credibility; (2) the fact that there was an outstanding arrest warrant for the defendant, which had gone unexecuted for some time, indicates a lack of good faith on the part of the officers,[4] and an arrest warrant in and of itself certainly did not justify a full blown search of the defendant's residence; and (3) the application failed to note that a woman named Julie Hoftender had operated Michael Gatena's pickup truck on numerous occasions around the time of the incident and had been stopped frequently in an effort to execute the arrest warrant upon the defendant.[5]

The government resists, arguing that the defendant has not satisfied her burden of setting forth a substantial preliminary showing of a false or reckless statement or omission, and further that the defendant has not demonstrated that any such false statements or omissions, if they existed, were necessary to the finding of probable cause for the search warrants.[6] Specifically, the government argues that if the affidavits in question had contained the omitted or corrected information, as alleged by the defendant, inclusion of that information would not have undermined the fact that probable cause had been established. Specifically in regard to the November 18, 2004 search warrant, the

---

[4] The defendant also points out that the address listed for the defendant on the arrest warrant was not a valid address for her or for anyone, and that it was well known in the law enforcement community that the defendant resided at 101 East 29th Street and also could likely have been located at the Rock Grove Court address.

[5] The defendant asserts that she has a good faith belief that these attempts at executing the arrest warrant on the defendant were not bona fide attempts, but rather "subterfuge efforts to authorize searches of" Michael Gatena's pickup.

[6] The government reiterates its argument, however, that there is no evidence as to any of the search warrants in question that the affiant omitted facts with an intent to make the affidavits misleading.

government points out that the informant's attachment indicated that at least one of the two informants had supplied reliable information on previous occasions, that it was in both informants' interest to provide reliable information, that at least one of the informants had not given false information in the past, and that the information given by the confidential informants was otherwise corroborated.

The court finds that the defendant has failed to make the requisite showing, pursuant to Franks v. Delaware, in regard to any of the three searches conducted pursuant to a warrant. First, in regard to the November 18, 2004 search warrant, the defendant has failed to make a substantial preliminary showing that relevant information was omitted from the affidavit either intentionally or recklessly. See McNeil, 184 F.3d at 775 (internal citations omitted); Moore, 129 F.3d at 992. The omissions alleged by the defendant do not rise to the level of "allegations of deliberate falsehood or of reckless disregard for the truth." See Id. at 775-76. The court further finds that even if the magistrate had before him the allegedly omitted information, his finding of probable cause would not have been undermined. See Gladney, 48 F.3d at 313; Flagg, 919 F.2d at 499; Amburn, 412 F.3d at 917 (internal citations omitted); Stropes, 387 F.3d at 771. Specifically, information provided in the affidavit, indicating that (1) on numerous occasions during the 60 days preceding the warrant the defendant had purchased several bottles of Heet gasoline; (2) Michael Gatena was at the defendant's residence picking up iodine crystals and information that the defendant had numerous cases of matches, several bottles of Heet, and glassware at her residence; and (3) information that the informant had seen the defendant process iodine into iodine crystals only one day before the search warrant was issued, sufficiently amounted to probable cause to search the defendant's residence. Further, the fact that one of the two informants may have been a long time drug user and may have had an extensive criminal history is not critical to the finding of probable cause. See Flagg, 919 F.2d at 499; Martin, 866 F.2d at 972; Wold, 979 F.2d at 632; Reivich, 793 F.2d at 957.

14

Likewise, the court finds that the defendant has failed to make a substantial showing that relevant information was omitted from the affidavits in support of probable cause either intentionally or recklessly in regard to the December 30, 2004 warrant or the June 5, 2005 warrant, or that the allegedly omitted information, set forth by the defendant, would have served to undermine the Magistrate Judge's finding of probable cause. See McNeil, 184 F.3d at 775; Stropes, 387 F.3d at 771.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[7] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the defendant's motion to suppress (docket number 46) be denied as it relates to the defendant's request for a Franks hearing. Hearing shall be set on the defendant's motion to suppress evidence arising out of the three warrantless searches.

September 7, 2005.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[7] Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.